MARY L. PRESSGROVE ET AL. v. D. B. COMFORT.

**WILL.** *Rule in Shelley's case. Case in judgment.*

R., who died in 1847, by his last will and testament devised his lands to his four grandchildren, by name, with the provision that when they all had become of age the property should be equally divided among them, and that "after such division the land allotted to each shall be held by *them* for and during their natural lives, in trust only for the use of the heirs of their bodies." Other clauses of the will show that the testator intended that the grandchildren named should be vested with the actual seisin of the property and the usufructuary enjoyment thereof for life. *Held*, that the grandchildren each took an estate of freehold in his allotted share of the land, and, by the rule in Shelley's case, the attempted limitation to his heirs also enured to his benefit.

APPEAL from the Circuit Court of Attala County.

Hon. S. S. CALHOON, Judge, presiding in place of Hon. C. H. CAMPBELL.

The appellants brought this action of ejectment to recover a certain tract of land formerly the property of their great-grandfather, Richard Ross, who died in 1847. Their right to

recover depends upon the construction of the last will and testament of their ancestor, Richard Ross. The provisions of his will are sufficiently stated in the opinion of the court. The judge presiding on the trial below construed the will so as to defeat the claim of the plaintiffs, and from the judgment against them they appealed to this court.

*C. M. Brooke*, for the appellants.

I contend that at the time the will went into effect, — to wit, August, 1847, the time of the death of the testator, — the character of the demise was not repugnant to the statutes of the State. Hutch. Code, p. 609, sect. 24; p. 610, sects. 26, 27. It was clearly the intention of the testator that the grandchildren named in the will should only take a life-estate in the property demised, the fee to go to the heirs of their bodies; and where that intention is clearly expressed in the will, and is not repugnant to the laws of the State, the court will see that intention carried out. In the construction of wills, the main object is to ascertain the intention of the testator. *Sorsby* v. *Vance*, 7 Ga. 564. On the same subject, see also 10 Smed. & M. 150; 6 Ga. 473; 10 Ga. 196; 7 Ga. 358; 40 Miss. 729.

*Jason Niles*, for the appellee.

It is manifest that the testator meant to give his four grandchildren an estate for life in their respective portions of the lands, and negroes alloted to each, with remainder to the heirs of their bodies. The context shows that the estates sought to be created by the will do not essentially differ from this: an estate for life to each of the four grandchildren, remainder to the heirs of their bodies. The law declares what sort of estate is thus created. The words, "in trust only," cannot materially change the limitation. If trustees at all, the grandchildren were yet not required to account for rents, issues, and profits. As trustees, they had nothing to do. They had their several parts allotted to them, which they held during their lives by the terms of the will, the remainder to the heirs of their bodies. See *Dott* v. *Cunnington*, 1 Bay, 453; *Polk* v.

*Faris*, 9 Yerg. 209 ; *Horne* v. *Lyeth*, 4 Har. & J. 431. Under the rule in Shelley's case, the first takers took the whole estate.    4 Kent's Comm. 215, 228, 229.

CHALMERS, C. J., delivered the opinion of the court.

By the last will and testament of Richard Ross, who died in Attala County, in this State, in 1847, he devised certain lands and negroes to his four grandchildren for life (he having no living children), with an attempted remainder to their heirs. The provision is that when the two elder of the grandchildren shall become of age there shall be a partial division of the property, and that thereafter these two shall receive the net profits of the portions allotted to them, until the two younger children shall come of age, at which time there shall be a general and equal division of all the property among the four grandchildren, and " after such division the land and negroes allotted to each shall be held by them for and during their natural lives, in trust only for the use of the heirs of their bodies."

If any estate of freehold was by this will conferred upon the first takers, it is quite clear that such takers, by operation of the rule in Shelley's case, were vested with an estate in fee, whereby the attempted limitation to the heirs of their bodies was defeated ; since it is a plain attempt by the same instrument to convey to one or more persons a freehold estate, with a limitation over, by way of remainder, of another estate of the same quality to the heirs of their bodies, as a class of persons to take in perpetuity.    It falls, therefore, strictly within the rule in Shelley's case.    4 Kent's Comm. 215.

It is argued, however, that no estate whatever was granted to the grandchildren by the will, but that they were mere naked trustees during their lives for their own heirs, and that, taking no estate of freehold, they cannot be vested with an estate in fee.    This argument is based upon the words, " shall be held by them    *    *    *    in trust only for the heirs of their bodies," and it would be plausible if other clauses of the will

did not show that they were not to be mere naked trustees, but were clothed both with the actual seisin of the property and the usufructuary enjoyment of the rents and profits for life. It differs in no respect from an ordinary life-estate, and is therefore an estate of freehold. It is well settled that a grant for life of the income and profits of personal property, or of the interest arising from stocks and other investments, will set in operation the rule in Shelley's case whenever, by the same instrument, there is a limitation over to the heir or heirs of the body of the first taker. *A fortiori* will it apply where it is real estate that is so granted, with the right of possession and usufructuary enjoyment in the first taker; nor will the application of the words, "in trust for his heirs" to the grantee of the life-estate, affect the result. *Scale* v. *Scale*, 1 P. Wms. 290; *Dods* v. *Dickerson*, 8 Vin. Abr. 450; *Butterfield* v. *Butterfield*, 1 Ves. sr. 133; *Daws* v. *Lord Chatham*, 1 Madd. 488; *s. c.* 5 Bro. P. C. 450; *Robinson* v. *Fitzherbert*, 2 Bro. C. C. 127. In *Garth* v. *Baldwin*, 2 Ves. 646, personalty was limited to trustees, to pay the profits to Edward Turner Garth for life, and afterwards to pay the same to the heirs of his body. It was held that Edward Turner Garth was vested, by the rule in Shelley's case, with absolute ownership of the property, though such was manifestly not the intention of the testator.

In *Kepple's Appeal*, 53 Pa. St. 211, a devise of real estate "to my son, in trust, and for the use of his heirs-at-law, to have and to hold the same during his natural life, but he shall in nowise sell or dispose of the same during his life," was held to pass the fee to the son. This case is quite on all fours with the matter in hand, and is in consonance with the current of authority.

Judgment affirmed.